UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DOUGLAS BAHNMILLER,

    Plaintiff,                                    Civil Action No. 16-14097

v.

                                                    HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Plaintiff David Douglas Bahnmiller ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions. For the reasons set forth below, Plaintiff's Motion for Summary Judgment [Docket #17] is GRANTED to the extent that the case is REMANDED to the administrative level for further proceedings. Defendant's Motion for Summary Judgment [Docket #19] is DENIED.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on March 14, 2014, alleging disability as of June 1, 2008 (Tr. 130). After the initial denial of the claim, he requested an administrative hearing, held on September 29, 2015 in Detroit, Michigan (Tr.

-1-

30). Administrative Law Judge ("ALJ") Joy Turner presided. Plaintiff, represented by attorney Michael S. Korby testified (Tr. 35-58), as did Vocational Expert ("VE") Harold Cynowa (Tr. 58-62). On December 15, 2015, ALJ Turner found that Plaintiff was not disabled as of the date last insured ("DLI") for DIB of December 31, 2013 (Tr. 20-26). On September 15, 2016, the Appeals Council denied review (Tr. 1-5. Plaintiff filed for judicial review of the final decision on November 18, 2016.

## BACKGROUND FACTS

Plaintiff, born January 30, 1960, was 55 when ALJ Turner issued her decision (Tr. 26, 130). He completed high school and worked previously as a tool maker (Tr. 144). His application for benefits alleges disability resulting from arthritis and back and wrist problems (Tr. 143).

### A. Plaintiff's Testimony

*Counsel amended the alleged onset of disability date to Plaintiff's 50th birthday, January 30, 2010* (Tr. 35).

Plaintiff then offered the following testimony:

He was divorced with two grown children, 28 and 26 (Tr. 35). He stood 5'11" and weighed 187 pounds (Tr. 35). He had lost 20 pounds since 2008 (Tr. 35-36). He lived by himself in Dearborn Heights, Michigan (Tr. 37). He supported himself with a small pension (Tr. 37).

He typically drove two days a week (Tr. 37). Due to right leg tightness, he avoided

situations where he was required to stand for extended periods (Tr. 37). He was also uncomfortable sitting (Tr. 37). After finishing high school, he completed a toolmaker apprenticeship (Tr. 38). He was a toolmaker for his entire career (Tr. 40). His job required him to lift up to 100 pounds (Tr. 40). He enjoyed his work but was unable to do it anymore due to his inability to stand or sit for any length of time (Tr. 41). He coped by using gravity boots and massage chairs with infrared heat (Tr. 41).

Prior to the date last insured of December 31, 2013, he received physical therapy and chiropractic treatment (Tr. 43). He had attempted to procure another job but experienced extreme discomfort sitting for even the course of the interview (Tr. 46). As of 2010, he treated his back exclusively with aspirin and putting cold and hot packs on his back (Tr. 48). He generally experienced level "eight" out of "ten" back and lower extremity pain (Tr. 48). Standing for the time required to make breakfast caused extreme pain (Tr. 49). He was limited to carrying 10 pounds on a rare basis and was unable to stand more than 15 minutes or walk for more than half a block (Tr. 49).

On a typical day, he would groom himself, drink juice, go over to his neighbor's home, watch television, and then use a massage chair and other modalities for about 90 minutes to relieve his pain (Tr. 51). He spent the rest of the day alternating between doing chores and resting (Tr 51). He experienced sleep disturbances as a result of the pain (Tr. 52). He required multiple daytime naps due to both sleep disturbances and generalized fatigue (Tr. 52). He was able to do "a little bit of laundry" thanks to a front loader that was "up high" so

he was not required to bend (Tr. 53). He traveled with a rubber chair if he anticipated that he would be required to sit for extended periods (Tr. 54). He experienced balance problems (Tr. 54). Plaintiff listened to YouTube videos on his smartphone for entertainment (Tr. 54). The back problems were originally caused by occupational overwork (Tr. 55).

In response to questioning by his attorney, Plaintiff reiterated that chores such as shopping trips took no more than 30 minutes and that he needed rest time before and after doing the chore (Tr. 56). After doing a chore, he experienced extreme pain for the rest of the day (Tr. 56). He coped with post-chore discomfort by taking a hot bath, stretching, or using ice packs (Tr. 56). A neurological surgeon had recently recommended back surgery, noting that Plaintiff could become paralyzed or have a stroke or heart attack as a result of untreated spinal problems (Tr. 57).

### B. Medical Evidence

#### 1. Records Related to Plaintiff's Treatment

In March, 2013, Plaintiff sought treatment from Ghadi G. Ghorayeb, M.D., reporting ongoing back pain and right leg numbness since 2001 (Tr. 184). He reported that he had been self-managing the pain with massage and heat (Tr. 184). He denied the use of pain medication (Tr. 184). Dr. Ghorayeb diagnosed Plaintiff with low back pain, lumbar sprain and strain, and an unspecified disc disorder (Tr. 185). An MRI from later the same month showed L5 spondylolysis with severe foramina narrowing (Tr. 187-189). Following the MRI, Dr. Ghorayeb diagnosed Plaintiff with spondylolysis with myelopathy (Tr. 190). He

referred Plaintiff for physical therapy (Tr. 190). Physical therapy records note Plaintiff's report of level "five" pain on average, "three to four" at best, and "nine" at worst (Tr. 243). He characterized his pain as "tingling," "penetrating," and "numbing" (Tr. 245). The records noted that Plaintiff was unable to sit for more than five minutes or stand for more than 15 (Tr. 249).

In November, 2013, Dr. Ghorayeb treated Plaintiff for hemorrhoids, noting "muscle aches [and] back pain" (Tr. 193). In March, 2014, Dr. Ghorayeb noted Plaintiff's report of ongoing back pain (Tr. 196). Dr. Ghorayeb referred Plaintiff to a spine specialist (Tr. 196). An MRI of the lumbar spine taken after Plaintiff sought emergency treatment showed grade 2 spondylolisthesis at "L5 over S1" (Tr. 201, 220). Roderick Claybrooks, M.D. noted that Plaintiff was unable to sit or stand for more than three minutes at a time (Tr. 204). Plaintiff reported that he had been disabled since June, 2008 (Tr. 205). Dr. Claybrooks noted that the clinical and imaging studies showed the need for surgical intervention (Tr. 206). Plaintiff reported that he was "not interested in surgery" at present (Tr. 206). In September, 2014, Plaintiff reported continued back pain and leg pain, weakness and numbness (Tr. 207). Dr. Claybrooks restated his original recommendation for surgery (Tr. 208). He recommended a functional capacity evaluation (Tr. 208). An x-ray showed stable grade 2 spondylolisthesis and spondylolysis at L5-S1 (Tr. 213).

Dr. Ghorayeb's August, 2015 records note Plaintiff's report of ongoing back pain and fatigue (Tr. 216). The following month, neurological surgeon Mick Perez-Cruet, M.D.

recommended a laminectomy, noting that an MRI from the same month showed "marked collapse of the disc space and forward progression of L4 on L5" (Tr. 222-223). Plaintiff reported the onset of the back condition at least as early as 2003 (Tr. 230). Dr. Perez-Cruet noted that "when compared with the prior study [March, 2014 MRI]" there had been "no substantial change" (Tr. 224).

November, 2015 post-laminectomy records show good motor strength and a normal gait (Tr. 257-259, 261-263, 274).

### 2. Non-Treating Records

In June, 2014, Muhammad Mian, M.D. completed a non-examining assessment on behalf of the SSA, finding that Plaintiff could lift or carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 75). Dr. Mian found that Plaintiff could kneel and climb ramps and stairs frequently and balance, stoop, crouch, crawl, and climb ladders, ropes, and scaffolds occasionally (Tr. 75-76). He did not find additional limitations (Tr. 75).

### 3. Records Submitted After the December 15, 2015 Administrative Decision[1]

April 11, 2016 records by Mick Perez-Cruet, M.D. note good motor strength in the upper and lower extremities and a normal gait (Tr. 276). Dr. Perez-Cruet noted that the condition of spondylolsthesis at L4-L5 was "long standing" but that Plaintiff "otherwise" appeared "to be doing very well" (Tr. 276). The following day, Dr. Ghorayeb wrote on a

---

[1] These records were not among those considered by the ALJ (Tr. 5).

prescription pad that he believed that Plaintiff's "pain and problems in his back" occurred "prior to 2013" (Tr. 278).

**C. Vocational Expert**

VE Harold Cynowa classified Plaintiff's past relevant work as a toolmaker as skilled and exertionally medium (heavy as actually performed)[2] The VE found that Plaintiff had transferrable skills to the light (but not sedentary level) involving quality control (Tr. 59). The ALJ then described the following hypothetical individual to the VE, using Plaintiff's age, education, and work background:

> [A]ssume that individual would be limited to light work except he could frequently climb ramps and stairs, occasionally climb ladders, ropes and scaffolds, he could frequently balance, occasionally stoop, frequently kneel, occasionally crouch and occasionally crawl. Can that individual perform any past work? (Tr. 60).

The VE testified that while all of Plaintiff's past relevant work would be eliminated, the hypothetical individual could perform the light, unskilled work of a hand packager (250,000 positions in the national economy); small products assembler (250,000); and visual inspector/checker (200,000) (Tr. 60). The VE testified further that if the individual lacked

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

"the persistence, pace or concentration to perform simple, routine tasks" on a full time basis; would be off task at least 20 percent of the workday; or, would miss three or more days of work each month, no competitive employment would be available (Tr. 61). In response to questioning by Plaintiff's attorney, the VE testified that if the individual were limited to standing or walking a maximum of 90 minutes a day, "a reduced range of light work allowing for a sit/stand option" would be available (Tr. 62). He testified further that the need to lie down during the workday would also preclude all full-time work (Tr. 62).

**D. The ALJ's Decision**

Citing the medical transcript, ALJ Turner found that although Plaintiff experienced the severe impairments of "degenerative disc disease and degenerative joint disease of the lumbar spine," the conditions did not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 22).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for unskilled, light work with the following limitations:

> [O]ccasionally crouch, stoop, crawl, and climb ladders, ropes, or scaffolds. In addition, the claimant was limited to frequent balancing, kneeling, and climbing of ramps and stairs (Tr. 23).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the work of a hand packager, small products assembler, and visual inspector/checker (Tr. 26, 60).

The ALJ discounted Plaintiff's allegations of limitation, noting that during the month prior to the DLI, Plaintiff denied "numbness, tingling, or weakness," and that "a physical

examination showed no evidence of neurological or musculoskeletal weakness" (Tr. 24). She noted that Plaintiff obtained good results from April, 2013 physical therapy (Tr. 24). She noted that the records showing a worsening of Plaintiff's condition post-dated the DLI of December 31, 2013 (Tr. 24).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

# ANALYSIS[3]

## A. Evidence Considered by the ALJ

Plaintiff disputes the ALJ's finding that he was not disabled prior to the date last insured ("DLI") of December 31, 2013. *Plaintiff's Brief,* 5-8, *Docket #17,* Pg ID 331. He argues that the records created in 2014 and 2015 support a finding of disability occurring before the expiration of benefits. *Id.*

It is well established that medical evidence created after the DLI must be considered for possible relevance to the claimant's condition before the expiration of benefits. "[E]vidence of a medical condition after the termination of eligibility status must be considered to the extent that it casts light on claimant's health before that date." *Garland v. Shalala*, 1996 WL 99809, at *9 (March 5, 1996)(*citing Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988); *Martonik v. Heckler*, 773 F.2d 236, 240-41 (8th Cir.1985))(in determining disability, "objective and subjective evidence must be considered, including medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status")(internal citations omitted). "[E]vidence created after a claimant's DLI, which

---

[3] Plaintiff's arguments, first, for a remand for the consideration of the newly submitted evidence and second, that the ALJ failed to consider the import of the records post-dating December 31, 2013 are considered in reverse order. The ALJ's failure to discuss the records created shortly after the DLI warrants a remand for further fact-finding. Because on remand, the ALJ will consider the records submitted after the administrative decision, the Court need not determine whether post-decision evidence constitutes independent grounds for remand. 42 U.S.C. 405(g). Likewise, because other grounds for remand exist, the Court declines to consider the argument for remand based on the ALJ's credibility determination.

permits an inference of linkage between the claimant's post–DLI state of health and her pre–DLI condition, could be the 'most cogent proof' of a claimant's pre–DLI disability." *Bird v. CSS*, 699 F.3d 337, 340–41 (4th Cir. 2012)(*citing Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir.1969)*.*

The ALJ found that the treatment records predating the DLI did not support the finding that Plaintiff was incapable of exertionally light work (Tr. 23-24). She noted that while Plaintiff sought medical treatment in March, 2013, he obtained "75 percent improvement" from only six sessions of physical therapy (Tr. 24). She noted that November, 2013 treating records "showed no evidence of neurological or musculoskeletal abnormalities" (Tr. 24). She observed that Plaintiff did not seek additional physical therapy or other back treatment prior to the DLI (Tr. 24). She found that evidence from March, 2014 forward "d[id] not relate back to the pre-DLI period, to the extent that it would materially affect the issue of disability prior to that time" (Tr. 24).

The ALJ's failure to otherwise discuss the records post-dating the DLI undermines her findings in multiple ways. First, an MRI taken less than three months following the DLI showing severe abnormalities lends support for Plaintiff's allegations of disability (Tr. 201, 220). Dr. Ghorayeb's records from March, 2014 do not suggest that Plaintiff's quest for treatment was precipitated by an injury or a sudden deterioration in his condition post-dating the DLI (Tr. 196). The March 11, 2014 records state that Plaintiff was "*still* complaining of back pain and [wanted] a referral to a spine specialist" (Tr. 196)(*emphasis added*). While

the medical finding that Plaintiff required surgery occurred after the DLI, "the critical date is the date of *onset* of disability, not the date of diagnosis." *Garland, supra*, at *9 (emphasis added)(*citing Willbanks v. HHS,* 847 F.2d 301, 304 (6th Cir.1988)).

Second, while the ALJ points out that the records pre-dating the DLI do not include functional capacity assessments, Dr. Claybrooks noted less than three month after the DLI that Plaintiff was unable to stand or sit for no more than three minutes or walk for more than ten (Tr. 204). Plaintiff's inability to walk for any meaningful period stands in sharp contrast with the finding that he was capable of exertionally light work less than three months earlier. *See fn 2, above.* Third, the ALJ's finding that Dr. Ghorayeb found "no evidence of neurological or musculoskeletal abnormalities" on November 15, 2013 amounts to a mis-characterization of the treating records. Plaintiff sought treatment for an urgent condition wholly unrelated to the back condition (Tr. 193). Dr. Ghorayeb's examination, resulting in findings of "good coordination, good memory and speech," and no fainting, numbness, seizures, tingling, tremor, or weakness appears to have been done to rule out either a stroke or neurological disease (Tr. 193). The ALJ's conclusion that Dr. Ghorayeb did not observe musculoskeletal abnormalities is contradicted by his notation that Plaintiff experienced "muscle aches" and "back pain" as of the November, 2013 appointment (Tr. 193).

Finally, the ALJ supported the non-disability finding in part by noting the absence of "medical opinions addressing the claimant's condition or functional limitations prior to the DLI," (Tr. 24). However, this finding cuts both ways. The ALJ's finding that Plaintiff was

capable of exertionally light work on or before December 31, 2013 (based exclusively on a non-examining assessment done on behalf of the SSA) did not have benefit of consultative source findings or a medical examiner's testimony. The March, 2014 imaging studies and clinical examinations showing that Plaintiff was incapable of even sedentary work, *i.e.,* unable to walk for more than 10 minutes, undermines the ALJ's finding that he was capable of light work (requiring walking up to six hours a day) less than three month earlier.[4] Thus, the modest evidence pre-dating the DLI does automatically defeat Plaintiff's claim to DIB. *See Garland, supra.*

For these reasons, a remand for discussion of the post-DLI records is required. Further, determination of whether the disability predated the DLI depends in large part on the interpretation of the clinical findings and imaging studies from March, 2014. As such, the testimony by a Medical Expert ("ME") may be required. The Court is mindful that "[t]he decision to call a ME is generally within the ALJ's discretion." *Sharay v.CSS*, 2016 WL 8114220, at *18 (E.D.Mich. August 28, 2016)(*citing Landsaw v. HHS,* 803 F.2d 211, 214

---

[4]SSR 83-10p describes exertionally light work as follows:

Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work . . . . Relatively few unskilled light jobs are performed in a seated position. 1983 WL 31251, at *5 (January 1, 1983).

(6th Cir. 1986)). Moreover, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw*, at 214 "The Court may overturn the ALJ's decision only if it appears that using an ME was 'necessary-rather than simply helpful-in order to allow the ALJ to make a proper decision.'" *Sharay* at *18 (*citing Young v. CSS,* 2011 WL 2923695, at *6 (S.D. Ohio, June 20, 2011)). However, in contrast to *Sharay* (ME not necessary because ALJ analyzed post DLI evidence and "had substantial evidence to support [those] findings"), in the present case, the administrative determination does not contain any discussion of the records created within weeks of DLI. A ME would be useful in determining whether (1) Plaintiff's condition worsened after the DLI insured and if so, (2) whether his condition worsened so dramatically that he was able to perform exertionally light work on December 31, 2013, but unable to perform even sedentary work less than three months later. In other words, does the March, 2014 evidence undermine the RFC for light work as of the DLI? At a minimum, the ALJ must provide a discussion of why the 2014 evidence does not support the disability claim.

### B. The Newly Submitted Evidence

As discussed in Section II.B.3, *above,* Plaintiff submitted additional records subsequent to the ALJ's December 15, 2015 decision (Tr. 276-278). On April 11, 2016, Dr. Perez-Cruet noted good motor strength in the upper and lower extremities and a normal gait (Tr. 276). Dr. Perez-Cruet noted that the condition of spondylolsthesis at L4-L5 was "long

standing" but that Plaintiff "otherwise" appeared "to be doing very well" (Tr. 276). The following day, Dr. Ghorayeb stated that Plaintiff's "pain and problems in his back" occurred "prior to 2013" (Tr. 278).

Under 42 U.S.C. § 406(g), records submitted after the administrative decision are subject to a narrow review by the reviewing court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). To establish grounds for a Sentence Six remand, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ... " § 405(g).

Because other grounds for remand exist, the Court need not determine whether the April, 2016 treating records showing good muscle strength and a normal gait but referencing Plaintiff's longstanding back problems are "material" to the ALJ's determination. Likewise, upon remand, the ALJ may consider Dr. Ghorayyeb's statement from the same month that Plaintiff's back problems predated the expiration of benefits. The Court is mindful that post-decision evidence created for the purpose of "rebutting" an ALJ's decision does not satisfy the "good cause" requirement of the sixth sentence of § 405(g). *Haney v. Astrue*, 2009 WL 700057, *6 (W.D. Ky. March 13, 2009)("[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability")(*citing Thomas v. Secretary*, 928 F.2d 255, 260 (8th Cir., 1991)); *See also Ledford v. Astrue*, 311 Fed.Appx. 746, 757, 2008 WL 5351015, *10 (6th Cir. December 19, 2008)(*citing Martin v.*

*Commissioner of Social Security*, 170 Fed.Appx. 369, 374-75, 2006 WL 509293 *5 (6th Cir. March 1, 2006)).  Despite the lack of good cause for the tardy submission of Dr. Ghorayyeb's April, 2016 statement, Plaintiff may present the newer evidence to the ALJ upon remand.  *See Huber v. Commissioner of Social Security*, 2009 WL 111738, *11 (E.D. Mich. January 15, 2009)(claimant not barred from presented newer material upon remand for further proceedings under the fourth sentence of § 405(g)); *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994)(same).

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment [Docket #17] is GRANTED to the extent that the case is REMANDED to the administrative level for further proceedings.  Defendant's Motion for Summary Judgment [Docket #19] is DENIED.

IT IS SO ORDERED.


        s/ R. Steven Whalen
        R. STEVEN WHALEN
        UNITED STATES MAGISTRATE JUDGE

Dated: March 22, 2018

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the foregoing document was sent to parties of record on March 22, 2018, electronically and/or by U.S. mail.

             s/Carolyn M. Ciesla
             Case Manager to the
             Honorable R. Steven Whalen